UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA MCGEE,<br><br>    Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>    Defendant. | CASE NO. **C08-5237RBL**<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for January 23, 2009 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

Plaintiff, Lisa McGee, is the surviving spouse of Darrin McGee and was substituted as Plaintiff when Mr. Mcgee died on or about November 1, 2008. The claimant was born in Le Grande, Oregon in 1965 and raised in Eugene, Oregon. He grew up with his mother and father until his father died when he was ten years old. He has two older brothers. Mr. McGee graduated from high school with good grades and completed a two-year college computer certification in ten months and had a 3.8 grade point average. He has worked various jobs including in construction, as a gas attendant, as a gas stations manager, and at a paper company. He was working at the paper company when he was injured. His longest job was

working as a delivery truck driver and an installer of various stereos and appliances. The company closed and that is how that job ended. He worked there for four years. He most recently worked in April 2002, for six months for a temporary agency.

Plaintiff's medical history was summarized by Dr. Essink after a psychiatric evaluation on November 13, 2003. Dr. Essink wrote:

> This is a 38-year-old male referred by Washington Social Security Disability Services for psychiatric evaluation. The claimant currently sees a primary care provider who is prescribing his psychiatric medications, and he has also seen a counselor every two weeks for psychotherapy. The claimant is somewhat circumstantial, but he otherwise provides a reliable history, which is internally consistent and consistent with available records.
>
> The claimant states that his [mental] problems began when he was a child. Looking back, he cannot remember a period when his mood was not depressed. He was diagnosed with ADHD when he was approximately six years old, and he was prescribed Ritalin from the ages of six through twelve years old. When he was in sixth grade his mother demanded that he be taken off of the medications. He reports having emotional abuse from his two older brothers and his father died of multiple sclerosis complications when the claimant was ten years old. The claimant reports ongoing chronic depression and his depression worsened in 1994 when he had an on the job injury when he tore tendons in his right elbow. He has been left with chronic pain complaints since that time. He reports a chronic pattern of having difficulty with authority figures, and he states he always feels he is smarter than others. He is always frustrated with his providers, and in October of 2002 was so upset with his providers and his chronic pain that he threatened to chop off his arm with a hatchet. The police ended up being called, and the claimant was hospitalized in a psychiatric ward. He has a history of overusing his pain medications and has had problems with anger management problems and was recently hospitalized in October of this year for two days after he overdosed on Valium and Toradol due to continuing frustration. He currently reports that his mood is "very frustrated" and he rates his mood a two on a ten point scale with one being most depressed mood and ten being happy mood. He endorses sleeping problems and has difficulty staying asleep due to his pain and sleeps only in two-hour blocks. He sleeps about five hours per night and takes naps frequently during the day but never feels rested. He endorses symptoms of anhedonia, feelings of guilt and worthlessness, a low energy level, and poor appetite. His memory has been good since he has been taking Ritalin. He has not had any recent weight changes. He shows no psychomotor disturbance and denies current suicidal ideation. He states that his mood can be happy for up to three days, but given his recent more severe depression, he will frequently only go about a half a day at a time where he feels euthymic. He denies any past history of mania.
>
> With regard to anxiety symptoms, the claimant does endorse significant symptoms of a generalized anxiety. He has had severe anxiety for the past five to six years and worries constantly about his health and money matters. He finds it difficult to control his worries and he worries more days than not. He feels restless and keyed up all the time, is easily fatigued, is irritable with people, has significant muscle tension, and has difficulty sleeping due to his anxiety. He denies panic attacks or significant symptoms of PTSD or OCD. He denies psychotic symptoms. He does have some ongoing problems with inattention, which are considerably better now that he has been prescribed Ritalin.
>
> **Medications**:
>
> The claimant currently takes Zoloft - 100 mg daily, Celexa - 20 mg daily, Ritalin - 10 mg

three times daily, Norco - 2 tablets three times daily, Fioricet - 2 tablets three times daily, Toprol XL - 50 mg in the morning, and Diovan HCT - 160 mg daily.

**Medication Allergies**:

The claimant is allergic to Penicillin, Codeine, and he has also had bad reactions to Cortisone.

**Past Psychiatric History**:

Prior medication trials have also included Paxil, Prozac, Effexor, Wellbutrin, Trazadone, Elavil, as well as others. The claimant has been hospitalized two times as previously mentioned and has attempted suicide the two times as previously mentioned. He has been in counseling off and on since six years old and has been compliant with regular psychiatric care since October of 2002.

**Past Medical History**:

Current illnesses include primary biliary cirrhosis, right elbow chronic pain due to torn tendons, cluster headaches, GERD, and the claimant has a history of GI bleeds. He has had a nissen fundoplication, and has had three surgeries on his right elbow as well as a surgery to repair his rotator cuff. Prior injuries have included about five closed head injuries with loss of consciousness due to accidents and fighting, and he also has had multiple fractures including in his hand, ankle, and kneecap.

Tr. 513-14.

On September 18, 2003, Mr. McGee filed an application for Social Security disability benefits, alleging that he has been disabled under the Social Security Act since March 24, 2002. His application was denied initially and on reconsideration. Tr. 46-48, 51-52. Mr. McGee filed a hearing request and a hearing was held before Administrative Law Judge ("ALJ"). Tr. 805-35. On July 27, 2006, the ALJ issued a decision in which he found that Mr. McGee was not disabled. Tr. 28-36. However, certain medical evidence was inadvertently not included in the record. Mr. McGee requested review by the Appeals Council which, on November 22, 2006, issued an order remanding Mr. McGee's claim for a new hearing to consider the additional evidence. Tr. 76-78.

A second hearing was held before the ALJ on August 28, 2007. Tr. 836-52. On November 6, 2007, the ALJ issued a decision in which he again found that Mr. McGee was not disabled. Tr. 12-23. Mr. McGee again requested review by the Appeals Council which, on February 25, 2008, denied his request for review, leaving the decision of the ALJ as the final decision of the Commissioner. Tr. 8-11.

Plaintiff now seeks additional judicial review of the administrative decision denying him social security benefits. Plaintiff specifically argues: (1) The ALJ Failed To Properly Consider All Of The Functional Limitations Caused By All Of Claimant's Impairments; (2) The ALJ Failed To Properly

Evaluate The Medical Evidence; (3) The ALJ Failed To Properly Evaluate The Opinion Of Claimant's Therapist; (4) The ALJ Failed To Properly Evaluate Claimant's Testimony, (5) The ALJ Failed To Properly Consider Lay Witness Evidence, (6) The ALJ Improperly Determined Claimant's Residual Functional Capacity, and (7) The Commissioner Failed To Meet The Burden Of Showing That The Claimant Can Perform Any Work In The National Economy. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions are properly supported by substantial evidence in the record.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

### A. *THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

Plaintiff argues, the ALJ failed to consider all of Mr. McGee's severe impairments, including the chronic pain, chronic fatigue, and anemia that have been diagnosed by many physicians. After reviewing the record, the undersigned finds the ALJ properly considered the medical evidence and consequently the ALJ's findings regarding Plaintiff's residual functional capacity and limitations are properly supported by the record. The ALJ properly considered the functional effects of all of Mr. McGee's impairments at steps three, four, and five.

Here, Plaintiff challenges the ALJ's assessment of the medical evidence, citing the opinions of Dr. Sjodin, Dr. Murray, Dr. Tremaine, Dr. Harris, Dr. Nicacio, Dr. Thompson, Dr. Essink, Dr. Schmidt, Dr. Guzman, Dr. Sheffield, and Dr. Ramsthel. The record contains numerous opinions from several different medical sources, which not surprisingly present differences of opinions.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

As noted above, the ALJ issued two different decisions on this matter. Tr. 15-23, 31-36. The latter decision incorporated the previous discussion of the medical evidence and review of additional medical evidence from Dr. Sheffield and Dr. Guzman, an additional consultative opinion and expert testimony from Dr. Rullman. Based on his review of the record, the ALJ found Plaintiff's impairments limited him to lifting no more than 10 pounds frequently and 20 pounds occasionally; to stand and/or walk for about 6 hours and to sit for about 6 hours in an 8-hour day; he was precluded from climbing ladders, ropes, and scaffolds, but could occasionally reach in all directions, including overhead; and was limited to work involving simple instructions with no public exposure and limited exposure to co-workers and supervisors. Tr. 18-22. The ALJ clarified that his residual functional capacity ("RFC") finding "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements" for assessing exertional and non-exertional limitations and assessing the credibility of subjective statements. Tr. 18 (citing 20 C.F.R. § 404.1529 and Social Security Rulings (SSRs) 96-4p and 96-7p).

The ALJ noted or summarized in his written decisions the opinions from the following physicians or medical providers: Dr. Tremaine, Dr. Murray, Dr. Sjodin, Mr. Spafford, Dr. Harris, Dr. Sheffield, Dr. Essink, Dr. Leonard, Dr. Rullman, Dr. Reiss, Dr. Nicacio, Dr. Guzman, and Dr. Ramsthel. The ALJ did

not reference or note the opinions of Dr. Thompson, who examined and evaluated Mr. McGee only one time at Southwest Washington Medical Center Pain Mgmt Clinic (Tr. 487-91), and Dr. Schmidt, who also only examined and evaluated Mr. McGee one time (Tr. 519-520). Plaintiff asserts error because the ALJ did not mention Dr. Thompson's or Dr. Schmidt's evaluations. However, there is no material difference between the diagnoses contained in their report and the ALJ's finding of severe impairment and RFC determination.

The ALJ's review of the medical evidence and his findings are properly supported by substantial evidence. The ALJ wrote at length in both decisions regarding the medical evidence and Plaintiff's impairments. The ALJ clearly relied on the opinion of Dr. Tremaine (Tr. 32), Dr. Harris, and Dr. Essink. When the ALJ did not accept a certain opinion he properly rejected it. For instance, Mr. Spafford, a mental health counselor/practitioner/therapist, stated Mr. McGee would be unable to do any work. The ALJ explained:

> The records begin in early 1999 and note claimant's numerous pain complaints. However, diagnostic studies at this time reveal little in the way of an etiology for his complaints. The records do note claimant's addiction to pain medications, his attempts to obtain more narcotics, and that he was discharged from two pain clinics and by an orthopedist. It is clear the claimant's pain complaints were in part an attempt to obtain more drugs. The records noted he was actually working at a temporary agency for six months until he was fired for reasons not related to his alleged disability. He was noted to have misrepresented himself on an application for employment and to have been less than credible about his prior legal problems. He had been less than credible when confronted with his attempts to obtain medications from two different doctors. While he alleged an inability to engage in most activities, the records and third party witness statements note he occasionally walks for about twenty minutes, does the vacuuming, folds clothes, does laundry and watches 4-5 hours of television. He leaves the home three to four times a week, reads magazines and comics. He was noted to have been repainting his house and to have actually been successful in finding a new job. His hobby is building computers (Exhibit 6E, 19E, and 20E). He was also noted to be caring for the home and his children while his wife works (page 227). While Mr. Spafford opined the claimant was disabled, such opinion has been accorded little weight for the reasons stated above.

Tr. 34. The ALJ also provided appropriate reasons to reject the opinion of Dr. Ramsthel, who found greater limitations than those assigned by the ALJ. The ALJ explained:

> In May 2007 Donald D. Ramsthel, M.D., completed a physical examination. He opined claimant could stand and walk for 10-20 minutes before needing to rest, could sit for 1 hour before needing to change positions, and could lift 10-15 pounds infrequently and 5 pounds frequently. I give this assessment little weight. Dr. Ramsthel based his limitations primarily on claimant's subjective complaints of fatigue and reported history of conditions. In addition, his conclusions are inconsistent with the record. Dr. Ramsthel also stated, "[Claimant] is currently living in a private home with his wife. He can do his ADL's, although he has to structure his time. Most of the time, however, he lies around all day" (Exhibit 32F).

> At the hearing, Dr. Rullman stated that medical records show claimant's liver condition was under control with steady improvement in function. He stated claimant's 2005 repeat liver biopsy was normal. He added that claimant's spinal condition was minimal.

Tr. 21.

Substantial evidence in the record supports the ALJ's decision. The ALJ's RFC accounted for pain associated with rotation of neck and headaches, further noting that Plaintiff's neurological exam was normal and Dr. Harris' observation that Plaintiff "does not look especially anxious or depressed." Tr. 20, 33, 444. The ALJ discussed Dr. Nicacio's treatment notes. Tr. 20. The ALJ noted in particular that in May 2004, after examining Plaintiff and reviewing a May 2003 MRI regarding Plaintiff's cervical spine and right shoulder, Dr. Nicacio stated "I am having some difficulty assessing why he has such significant pain with the relative absence of objective findings on diagnostic studies." Tr. 20, 652. The ALJ also noted Dr. Nicacio's opinion less than 2 weeks later expressing concern about Plaintiff's narcotic use. Tr. 20. Dr. Nicacio stated there was a need to "further investigate why the patient is in such pain" because "[h]is objective findings of his neck and also his shoulder, do not appear to be to the extent that would require the dosing of opiates." Tr. 20, 650-51. Dr. Nicacio also opined Plaintiff's pain was stable with new medication and he showed no pain behavior. Tr. 20, 644-48. Finally, in January 2005, Dr. Sheffield noted Plaintiff's liver biopsy was "completely normal." Tr. 639, 727. In February 2006, Dr. Sheffield noted Plaintiff "returns today actually doing extremely well" and his PBC was "under excellent control" and his chronic anemia was "no longer an issue." Tr. 725.

In sum, the ALJ was faced with a limited degree of contradicting medical opinions. Clearly, the ALJ gave more weight to the opinions discussed above that supported his RFC determination. The ALJ provided legitimate reasons, including Plaintiff's credibility (discussed further below), to reject those opinions, including the therapist Mr. Spafford, that were in conflict with his assessment. The undersigned finds no error in the ALJ's treatment and analysis of the medical evidence.

**B.   *THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY AND THE LAY WITNESS TESTIMONY***

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a

1  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as
2  long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144,
3  1148 (9th Cir. 2001).

4  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for
5  the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (*citation omitted*). The ALJ "must
6  identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;
7  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is
8  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."
9  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. O'Donnell v.
10 Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

11 In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
12 evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other
13 testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,1284 (9th Cir. 1996).  The ALJ
14 also may consider a claimant's work record and observations of physicians and other third parties
15 regarding the nature, onset, duration, and frequency of symptoms. Id.   The ALJ must cite reasons
16 germane to the witness in order to properly discredit lay witness testimony.   Schneider v. Commissioner,
17 223 F.3d 968, 976 (9th Cir. 2003).

18 Here,  the issue of Mr. McGee's credibility is crucial to the ALJ's analysis of the case.  As noted
19 above, the medical evidence contained many statements and comments demonstrating Mr. McGee's
20 ulterior motives at times to obtain pain medication and his untruthfulness.  The ALJ properly relied on
21 substantial evidence in the record to discredit Mr. McGee's statements.  In his initial decision, the ALJ
22 noted that no treating or examining physician had opined Plaintiff was disabled or assessed a functional
23 capacity that would preclude performance of basic work activities on a sustained basis. Tr. 34. The ALJ
24 noted that diagnostic studies revealed little in the way of an etiology for Plaintiff's complaints. Tr. 34.
25 The ALJ further observed that the records noted Plaintiff's addiction to pain medications, his attempts to
26 obtain more narcotics, and that he was discharged from two pain clinics and by an orthopedist. Tr. 34.
27 The ALJ found the record clearly indicated Plaintiff pain complaints were in part an attempt to obtain
28 more drugs. Tr. 34. This is a proper basis to question the credibility of a claimant's subjective complaints.

The record demonstrates that the ALJ provided clear and convincing reasons, supported by substantial evidence, to find Plaintiff's allegations of disabling limitation incredible. Tr. 18-22, 34.

Plaintiff also asserts that the ALJ did not give germane reasons to reject the lay statements of Mr. Spafford, Lisa McGee, Melanie Culp, and Phill Culp. Plaintiff's assertion is without merit. As noted above, Mr. Spafford's opinion was properly rejected because it was based primarily on Plaintiff's subjective complaints and it was inconsistent with the medical evidence relied on by the ALJ. With regard to the other lay witness statements, the undersigned similarly finds no error. The ALJ specifically noted he was giving them some weight, Tr. 21-22, 134-45, 216-24, 225-33, but clearly he did not accept any statement that was inconsistent with his evaluation of the medical evidence for the same reasons discussed above.

In sum, the ALJ properly discredited Mr. McGee's complaints and allegations regarding the severity of his limitations. Similarly, the ALJ properly accepted the lay witness testimony that was not inconsistent with non-disability, but clearly rejected the testimony that suggested or alleged Mr. McGee was unable to do any work. The ALJ properly relied on the medical evidence to discredit the testimony, as well as the inconsistency and misleading statements made by Mr. McGee over time.

## C. *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY AND RELIED ON TESTIMONY OF THE VOCATIONAL EXPERT*

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff argues the ALJ's RFC finding does not address or include all of Mr. McGee's limitations. Specifically, Plaintiff argues Mr. McGee was more limited than concluded by the ALJ. Plaintiff's argument is premised on the contention that the ALJ erred when he evaluated the medical evidence and

the testimony. As discussed above, the ALJ properly considered the medical evidence and he discounted or rejected certain opinions relied on by Plaintiff to make this argument. Likewise, the ALJ properly considered and discounted Plaintiff's testimony and the statements of lay witnesses that would support greater limitations than concluded by the ALJ.

The ALJ found Plaintiff's impairments limited him to lifting no more than 10 pounds frequently and 20 pounds occasionally; to stand and/or walk for about 6 hours and to sit for about 6 hours in an 8-hour day; he was precluded from climbing ladders, ropes, and scaffolds, but could occasionally reach in all directions, including overhead; and was limited to work involving simple instructions with no public exposure and limited exposure to co-workers and supervisors. Tr. 18-22. The ALJ clarified that his residual functional capacity ("RFC") finding "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements" for assessing exertional and non-exertional limitations and assessing the credibility of subjective statements. Tr. 18. After reviewing the record and ALJ's RFC finding, the undersigned finds no errors. The ALJ's RFC finding accurately reflects medical evidence relied upon by the ALJ.

### D. *THE ALJ PROPERLY COMPLETED STEP-FIVE OF THE ADMINISTRATIVE PROCESS*

At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of her age, education, work experience, and residual functional capacity. *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff argues the hypothetical posed by the ALJ to the vocational expert did not accurately reflect Plaintiff's limitations. The argument is again premised on the allegations that the ALJ erred in assessing the medical evidence and that the ALJ erred in considering Plaintiff's credibility. As discussed above, the undersigned finds no error in the ALJ's treatment of either the medical evidence or Plaintiff's

REPORT AND RECOMMENDATION
Page - 10

credibility.

The ALJ posed a hypothetical to the vocational expert which accurately reflected Plaintiff's RFC, a person who can perform light work with certain limitations. Tr. 831-833. The vocational expert testified that a person similar to Plaintiff would be able to perform work as a food assembler or small products assembler. Referring to the medical-vocational guidelines and considering the vocational expert's testimony, the ALJ properly concluded Plaintiff would be able to perform work within the national economy.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 23, 2009**, as noted in the caption.

DATED this 5th day of January, 2009.

                                  */s/ J. Kelley Arnold*
                                  J. Kelley Arnold
                                  U.S. Magistrate Judge